UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
RUKMINI RAMKUMAR,

        *Plaintiff*,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant*.
-------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

20-CV-2541 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Rukmini Ramkumar appeals the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), which found that Plaintiff was not eligible for disability insurance benefits under the Social Security Act ("the Act") because Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. Before the court are the parties' respective cross-motions for judgment on the pleadings.

      For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is GRANTED, and the Commissioner's motion is DENIED.

<u>**BACKGROUND**</u>

## I.   Procedural History

      Plaintiff applied for Social Security Disability insurance benefits on February 21, 2017, alleging an onset date of disability of September 11, 2016. (ECF No. 13, Administrative Transcript ("Tr."), at 10, 152-57.) Plaintiff

1

alleged that she was disabled due to the following conditions: (1) bipolar disorder, (2) depression, and (3) anxiety disorder. (Tr. 177.) Plaintiff's application was initially denied on July 12, 2017. (Tr. 87.) Plaintiff then filed a written request for a hearing on August 14, 2017. (Tr. 95.)

On January 28, 2019, Plaintiff appeared for a video hearing before Administrative Law Judge ("ALJ") Monica D. Jackson. (*See* Tr. 39.) Kim Bates also testified as an impartial vocational expert. (Tr. 65.) The ALJ considered two issues:(1) whether Plaintiff was disabled under sections 216(i) and 223(d) of the Act, and (2) whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Act. (Tr. 11.) In a written decision dated February 27, 2019, the ALJ found that Plaintiff was not disabled as defined under the Act. (Tr. 27.) On April 22, 2019, Plaintiff requested review from the Appeals Council. (Tr. 150.) The Commissioner's decision became final when the Appeals Council denied Plaintiff's request for review in a letter dated April 7, 2020. (Tr. 1.) This appeal followed.

## II. Factual Background

The parties in this case filed a joint stipulation of facts that appear in the record, which the court incorporates by reference. (*See generally* ECF No. 17, Joint Stipulation of Facts ("Stip.").) Having reviewed the parties' joint

stipulation of facts, the ALJ's decision, and relevant evidence in the administrative record, the court notes the following evidence:

### A. Plaintiff's Testimony at the Administrative Hearing

Plaintiff was born on September 29, 1973 and was forty-five years old at the time of the hearing. (Stip. 2.) Plaintiff testified that she has a ninth-grade education and has not worked since September 11, 2016. (Stip. 2.) Plaintiff said that she was unable to continue her work as a babysitter because of her depression and because she could not handle the stress of the work. (*Id.* at 3.)

Plaintiff testified that she had been diagnosed with bipolar disorder, panic attacks, and depression. (*Id.*) Plaintiff said that it is "very hard" for her to get out of bed on a daily basis. (Stip. 4 (citing Tr. 56-57).) Since 2013, she has seen her psychiatrist once a month and her therapist every two weeks. (Stip. 3.) Sometimes, however, Plaintiff misses appointments because she is too depressed to go. (*Id.*)

With respect to her depression, Plaintiff testified that it was so severe at times that she spent the entire day in bed. (*Id.*) Plaintiff said that she then helps her fiancé get her kids to school and she tries to walk but she gets very tired and frustrated. (Stip. 4 (citing Tr. 56-57).)

With respect to her anxiety, Plaintiff testified that
she had panic attacks during the day and at night.  (Stip. 3.)
She would get up in the middle of the night with panic attacks
and slept on average three hours per night.  (*Id.*)  She
testified that her panic attacks felt like her "heart [was]
pumping really bad" and last for approximately 15 minutes.
(Stip. 3 (citing Tr. 60).)  Ms. Ramkumar said that she did not
travel alone because she was scared that she would get lost.
(*Id.*)

Plaintiff said that her partner, James Eisenhardt,
managed her children's schedules, meals, and appointments, but
that she helped get her kids to school.  (Stip. 3-4.)  A home
health aide also assisted Plaintiff seven days a week for five
to six hours a day with cooking, cleaning, grooming and getting
to doctors' appointments.  (Stip. 4.)

Plaintiff also discussed her physical impairments,
which include arthritis, gastrointestinal issues, and pain in
her chest.  (Stip. 3.)  She testified that she could stand or
walk for approximately 20 minutes and she can sit for
approximately 30 minutes.  (*Id.*)  She further testified that she
could lift or carry approximately 20 pounds and that she had
trouble stooping, kneeling, crouching, crawling, and bending.
(*Id.*)  Ms. Ramkumar said she had numbness, tingling, and pain in

her hands, which the doctors have opined was due to inflammation. (*Id.* at 3-4.)

### B. Plaintiff's Medical History

Treatment records indicate that Plaintiff has a long history of depression. (Stip. 4 (citing Tr. 1749).) Plaintiff was hospitalized for a month at the age of 18 and treated with medications. (*Id.*) She has flashbacks of the physical and mental abuse inflicted by her first husband, who she married at the age of 19. (*Id.*)

Since 2014, Plaintiff has participated in weekly psychotherapy sessions and monthly medication management sessions with several mental health care providers at Jamaica Hospital. (*Id.*) Dr. Sindhura Suryadevara, M.D., Plaintiff's treating physician for her mental health complaints, reported that Plaintiff's first date of treatment was September 6, 2014 and her most recent date of treatment was February 6, 2018. (*Id.* at 14.) Reports discuss Plaintiff experiencing symptoms of paranoia, poor sleep, auditory hallucinations, depression and panic attacks. (*Id.* at 4 (citing Tr. 402, 421, 1938).) Plaintiff has reported increased psychiatric symptoms during the period at issue, including during times when she ran out of medications and was exposed to external stressors. (*Id.* at 5.)

Plaintiff has also seen doctors for physical impairments, which include arthritis, gastrointestinal issues

5

and early degenerative joint disease changes that were thought to be accelerated by weight.  (Stip. 15.)

1. <u>Mental Health Examinations</u>

In fall 2016, Plaintiff described increased mental health symptoms after running out of medications due to moving and issues with her new apartment.  (Stip. 5 (citing Tr. 281).) In November 2016, a mental status examination revealed a stressed mood, but intact attention, concentration and memory as well as good insight and judgment.  (*Id.* (citing Tr. 288).) Plaintiff reported compliance with her medications and improved mood, but not sleep, at her November 2016 visit.  (*Id.*)

In winter 2016, Plaintiff described improved mood, sleep, and energy after restarting her medications.  (*Id.*)  The February 2017 mental status examination reported that Plaintiff had a "fine" mood and good insight and judgment.  (*Id.*)

A Treatment Plan Review dated April 2017 noted that Plaintiff had poor compliance with her medical appointments, which led to a break in her treatment and restarting medications.  (*Id.*)  Plaintiff said her absences were due to her children's frequent illness.  (*Id.*)

In May and June 2017, Plaintiff described improved mood with the medication Latuda, but the mental status examination revealed a stressed mood and constricted affect. (*Id.*)  Plaintiff later said that she was following her

medications without adverse side effects and had been doing "okay" for the past few months, but still had panic attacks. (Stip. 6.)  She also reported that she exercised daily and attended church and social activities with peers.  (*Id.*)  The mental status examination revealed that she was cooperative, calm, had goal-directed thoughts, fair insight and judgment, adequate impulse control, and grossly intact attention, concentration, and memory.  (*Id.*)

In August 2017, Plaintiff reported feeling "very depressed" lately.  (*Id.*)  At her therapy and psychiatric medical management sessions, Plaintiff presented with a normal mood, but reported experiencing auditory hallucinations.  (*Id.*) She reported hearing voices calling her name and saying "come, Rose, come" and "come on Rose, throw keys."  (Stip. 6 (citing Tr. 1777, 1782).)

On September 13, 2017, Plaintiff reported improvement in auditory hallucinations on Latuda and said she was doing "okay."  (Stip. 7.)  On September 22, 2017, Plaintiff denied presently experiencing auditory hallucinations.  (*Id.*)  As of September 2017, Ms. Ramkumar was diagnosed with: attention deficit hyperactivity disorder, anxiety, bipolar disorder, borderline personality disorder, fatigue, neuropathy, obsessive-compulsive disorder, oppositional defiant disorder, psychosis,

posttraumatic stress disorder, schizoaffective disorder, and seizures. (Stip. at 7 (citing Tr. 1939-1940).)

During her December 1, 2017 psychiatrist visit, Plaintiff reported that she was depressed, but still able to care for herself and her children. (*Id.*) The mental status evaluation revealed that she had an "okay" mood, was cooperative and calm, had intact insight and judgment, and grossly intact attention, concentration and memory. (*Id.*) At the end of 2017, Plaintiff told her treating physician Dr. Suryadevara that she was independent in daily living activities and the care of her children. (*Id.*)

In January 2018, Plaintiff said that she had panic attacks, which interfered with her sleep, and was sleeping a maximum of four hours a night. (Stip. 8.) She rated her depression as eight out of ten. (*Id.*) Dr. Suryadevara completed a psychiatric assessment form on February 6, 2018, reporting that Plaintiff's recent mental status examinations revealed depressed affect and impaired concentration and attention. (Stip. 14 (citing Tr. 1889-94).)

In May 2018, Plaintiff described her mood as relatively stable and cited compliance with therapy as a supportive factor. (Stip. 8.) The mental status examination revealed a cooperative attitude, "okay" mood, constricted affect, intact judgment and insight, and grossly intact

attention, concentration and memory.  (Stip. 8.)  This finding was reaffirmed during Plaintiff's June, July, and August 2018 medical appointments.  (Stip. 9-10.)  During this time period, Plaintiff also reported mood stability and said that her sleep, independence in activities in daily living, and care of her children were all improving significantly.  (Stip. 10.)

In October 2018, during a pharmacological management session, Plaintiff reported mood stability and a desire to continue with her current medications.  (*Id.*)  The mental status evaluation findings were the same as the previous summer findings.  (*Id.*)  At a psychiatric check-up visit in November 2018, Plaintiff reported that she was feeling more depressed and having difficulty sleeping.  (*Id.*)

### 2. Medical Examinations, Diagnoses, and Opinions

#### a. *Dr. Sinhura Suryadevara, M.D.*

Dr. Suryadevara, Plaintiff's treating physician at Jamaica Hospital, completed a psychiatric assessment form on February 6, 2018.  (Stip. 14 (citing Tr. 1889-94).)  Dr. Suryadevara diagnosed Plaintiff with bipolar disorder.  (*Id.*)

Dr. Suryadevara opined that Plaintiff had mild difficulties in interacting with others and adapting and managing herself.  (*Id.*)  She further opined that Plaintiff had moderate difficulties understanding, remembering, or applying information including with impairment of memory recall tasks and

moderate deficiencies with respect to concentration, persistence, or pace. (*Id.*) Additionally, Dr. Suryadevara reported that Plaintiff had marked difficulties either continuously or intermittently, in understanding and learning terms, instructions and procedures, following one- or two- step oral instructions to carry out a task, sequencing multi-step activities, and keeping social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness. (*Id.*)

With respect to work, Dr. Suryadevara opined that Plaintiff could maintain concentration for less than 75% of the workday. (*Id.*) Plaintiff's condition was likely to produce "good" days and "bad" days and, on average, Plaintiff was likely to be absent from work about four days per month. (*Id.*) Dr. Suryadevara opined that she had marked difficulties, either continuously or intermittently, completing tasks in a timely manner, ignoring or avoiding distractions while working, working a full day without needing more than the allocated number or length of rest periods during the day, adapting to changes, and managing psychologically based symptoms. (*Id.*) Dr. Suryadevara further opined that Ms. Ramkumar had minimal capacity to adapt to changes in her environment or to increased mental or stress-related demands such that a change in environment or increased

demands leads to exacerbation of sign/symptoms and deterioration in functioning. (*Id.*)

> b. *Clementina Porcelli, Ph.D*

Dr. Porcelli conducted a consultative psychiatric examination of Plaintiff on June 2, 2017. (Stip. 11 (citing Tr. 316-20).) Plaintiff reported depressive, anxiety, manic, and other cognitive symptoms like loss of usual interest, irritability, fatigue, loss of energy, concentration difficulties, diminished sense of pleasure, and social withdrawal. (*Id.*) Additionally, Plaintiff stated that she relied on her fiancé for assistance with activities of daily living. (*Id.*) Dr. Porcelli diagnosed Plaintiff with bipolar I disorder, unspecified depressive and anxiety disorders, and panic attacks. (*Id.* at 12.)

Dr. Porcelli determined that Plaintiff's cognitive functioning was below average and her insight and judgment were fair to poor. (*Id.*) Dr. Porcelli opined that Plaintiff could understand, remember, and apply simple directions and instructions without limitation. (*Id.*) Dr. Porcelli considered Plaintiff to be moderately limited with regards to complex directions and instructions; using reason and judgment to make work-related decisions; interacting adequately with supervisors, coworkers and the public; sustaining concentration and performing a task at a consistent pace; and regulating emotions,

controlling behavior and maintaining well-being.  (*Id*.)  Dr.

Porcelli further opined that Plaintiff was mildly limited with

regard to sustaining an ordinary routing and regular attendance

at work.  (*Id.*)  Dr. Porcelli reported that Plaintiff's

difficulties were caused by her depression, anxiety and bipolar

symptomatology.  (*Id*.)  She determined that, "[t]he results of

the examination appear to be consistent with psychiatric

problems, but in itself does not appear to be significant enough

to interfere with the claimant's ability to function on a daily

basis."  (*Id.* (citing Tr. 319).)

### c. *Y. Burstein, State Agency Psychological Consultant*

On June 14, 2017, state agency psychological

consultant Y. Burstein reviewed the evidence available in

Plaintiff's file to render an assessment as to Plaintiff's

mental capabilities.  (Stip. 12-13.)

Following his review, Burstein opined that Plaintiff

was capable of understanding and following simple direction and

sustaining concentration for simple tasks.  (Stip. 13.)  He

thought that Plaintiff was able to adapt to changes as well as

relate adequately to others.  (*Id*.)  Burstein further opined

that Plaintiff was moderately limited with respect to performing

activities within a schedule, maintaining regular attendance,

being punctual within customary tolerances, sustaining an

ordinary routine without special supervision, interacting appropriately with the general public, getting along with coworkers or peers without exhibiting behavioral extremes, maintaining socially appropriate behavior, responding appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (*Id.*) Burstein determined that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures, work in coordination with or in proximity to others without being distracted by them, make simple work- related decisions, accept instructions, accept instructions and respond appropriately to criticism from supervisors, be aware of normal hazards, travel in unfamiliar places or use public transportation, and understand, remember, and carry out very short and simple instructions. (*Id.*)

### C. Plaintiff's Written Function Report

Plaintiff's partner James Eisenhardt completed a written function report, dated May 5, 2017, describing Plaintiff and her conditions. (Stip. 2.) Mr. Eisenhardt wrote that, "[d]ue to depression and arthritis, [Ms. Ramkumar] sometimes can't function." (*Id.*) Mr. Eisenhardt marked on the report that Plaintiff did not take care of anyone else and added that a home health aide helped her with dressing, bathing, and grooming. (*Id.*) He indicated that Plaintiff was unable to do

13

chores herself and needed assistance with them, as well as reminders to take her medications and bathe. (*Id.*)

Mr. Eisenhardt reported that Plaintiff had problems getting along with family, friends, neighbors or others. (*Id.*) He further noted that Plaintiff had become very reclusive and did not socialize much. (*Id.*) Plaintiff could not go out alone because she would have panic attacks. (Stip. 3.) Mr. Eisenhardt noted that Plaintiff had panic attacks weekly, which were caused by stress and included symptoms such as fear, rapid heartbeat, and shortness of breath. (*Id.*) Mr. Eisenhardt also disclosed Plaintiff's physical impairments, which included: arthritis, Plaintiff's inability to lift heavy objects or stand/walk for long periods of time, inability to climb stairs due to shortness of breath, and inability to kneel due to weight. (Stip. 2.)

### D. Vocational Expert's Testimony

Kim Bates, M.S., CRC testified at the administrative hearing as an impartial vocational expert. (Stip. 16 (citing Tr. 65-70, 229-30).) Ms. Bates testified that Plaintiff's past work would be classified as a child monitor and a home health aide. (Stip. 16.) The ALJ also asked the vocational expert to consider a hypothetical individual under certain work limitations. (*Id.*) The vocational expert testified that this hypothetical individual would not be able to perform any of

Plaintiff's past work.  (*Id.*)  This hypothetical individual, according to the vocational expert, could perform other positions existing in significant numbers in the national economy such as mail clerk, office helper, and garment sorter. (*Id.*)  The individual would not be able to sustain any competitive work activity with the additional limitations of being absent from work for two or more days each month, being off task for 10% or more of the day, and/or requiring reminders throughout the day.  (*Id.*)

### III. The ALJ's Five-Step Evaluation for Determining Plaintiff's Disability

A claimant must be "disabled" within the meaning of the Act to receive benefits.  *See* 42 U.S.C. §423(a).  An individual is disabled under the Act when he or she is not able "to engage in any substantial gainful activity" because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last" for at least twelve continuous months.  42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant is disabled within the meaning of the act, the ALJ applies a five-step sequential evaluation process.  20 C.F.R. § 404.1520.

In addition to being disabled within the meaning of the Act, the claimant must also have been insured within the meaning of 42 U.S.C. § 414 at the time he or she became

disabled.  42 U.S.C. § 423(a)(1)(A).  As a threshold matter, the ALJ found that, based on Plaintiff's earnings records, Plaintiff meets the insured status requirements of the Act.  (Tr. 12.)

Next, the ALJ applied the five-step sequential evaluation to determine whether Plaintiff was disabled within the meaning of the Act.  (Tr. 12-27.)  The burden of proof is on the Plaintiff for steps one through four, but shifts to the ALJ for step five.

At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful employment.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is not engaged in substantial gainful employment, the ALJ will proceed to step two.  Here, the ALJ determined that there was a continuous 12-month period during which Plaintiff was not engaged in substantial gainful activity.  (Tr. 13.)

At step two, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment" or a "combination of impairments that is severe and meets [the Act's] duration requirement."  20 C.F.R. § 404.1520(a)(4)(ii).  Both physical and mental impairments "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  If the ALJ finds that the impairment is medically determinable and severe, then the ALJ will proceed to step three.  At this step, the ALJ found

that Plaintiff had severe mental and physical impairments including: depression, bipolar disorder, panic disorder, anxiety disorder, mild degenerative disc disease, patellofemoral arthritis, arthralgia of the right should, and status post left should repair. (Tr. 13.) The ALJ noted that these severe impairments "significantly limit the ability to perform basic work activities." (Tr. 13.)

At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds that the claimant does not have a listed impairment, then the ALJ must determine the claimant's residual functional capacity ("RFC") before continuing with the evaluation. 20 C.F.R. § 404.1520(a)(4). An individual's RFC is "the most [a claimant] can still do" in a work setting despite physical or mental limitations from his or her impairments. 20 C.F.R. § 404.1545(a)(1).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15.) Specifically, the ALJ determined that Plaintiff's mental impairments did not meet the criteria of listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and

obsessive-compulsive disorders, and 12.15 (trauma and stressor related disorders).  (Tr. 15.)  The ALJ considered both the Paragraph B and C criteria of the aforementioned listings when evaluating the impairments and determined that neither were satisfied.  (Tr. 15.)

After finding that Plaintiff did not have a listed impairment, the ALJ next determined Plaintiff's residual functional capacity ("RFC") before continuing to steps four and five of the evaluation.  (*Id.*)  Having reviewed the record, the ALJ found that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b).  (*Id.* at 18.)  The ALJ found that Plaintiff has the RFC to understand, remember and carry out simple instructions and make simple work-related decisions. (*Id.*)  The ALJ opined that Plaintiff can tolerate occasional interaction with coworkers and supervisors and occasional changes in work settings, but cannot tolerate interaction with the public.  (*Id.*)  In making this finding, the ALJ stated that she considered the entire record, all symptoms and the extent to which those symptoms reasonably could be accepted as consistent with the objective medical evidence, and opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 404.1529.  (Tr. 18.)

The ALJ reported that Plaintiff's statements concerning the intensity, persistence, and limiting effects of

her alleged symptoms were not entirely consistent with medical and other evidence in the record. (Tr. 19.) The ALJ cited Plaintiff's ability to care for two young children and her activities of daily living as evidence that was inconsistent with Plaintiff's statements regarding the severity of her impairments. (*Id.*)

In so finding, the ALJ reasoned that, "a review of the evidence shows that [Plaintiff's] mental health disorders are not as limiting as alleged." (Tr. 22.) In particular, the ALJ noted that medical records reflect that Plaintiff presented with a normal mood at some visits despite external stressors and that Plaintiff described depressed periods caused by these stressors as relatively minimal with no impaired sleep. (*Id.*) The ALJ also cited Plaintiff's coping skills developed in therapy and Plaintiff's statements that she does well on medications as evidence of effective treatment. (*Id.*) The ALJ concluded that medical records show that Plaintiff retains some mental ability to perform basic work activities. (*Id.*) The ALJ cited Plaintiff's generally normal mental status examination findings, conservative and routine treatment, reports of improvement with medication, and her ability to care for small children. (Tr. 23.) For example, Plaintiff reported improvement with hallucinations after her Latuda dosage was increased. (*Id.*) Accordingly, the ALJ found that Plaintiff's mental disorders

were reflected in the RFC, which provided instructions regarding Plaintiff's "understanding, remembering, and carrying out simple instructions; making simple work related decisions; sustaining an ordinary routine without special supervision; working at a consistent pace throughout the workday . . . and tolerating occasional changes in the work setting and occasional interaction with coworkers and supervisors." (*Id.* at 23.)

In support of the RFC determination, the ALJ reviewed the medical opinions and assigned weight to each medical opinion. The ALJ assigned "partial weight" to treating physician Dr. Suryadevara's opinion that Plaintiff has significant mental limitations. (Tr. 25.) The ALJ assigned "little weight" to the Dr. Suryadevara's opinion that Plaintiff had mild impairments in her ability to adapt and interact with others because her symptoms, including her panic attacks, hallucinations, and self-isolation, suggested greater limitations. (*Id.*) The ALJ assigned "great weight" to the Dr. Suryadevara's opinion that Plaintiff had a moderate impairment in her ability to understand, remember or apply new information because this opinion was supported by mental status examinations. (*Id.*)

In contrast, the ALJ assigned "significant weight" to Dr. Porcelli's opinion, the consultative examiner who examined plaintiff once. (Tr. 24; Stip. 12.) The ALJ explained that she

gave significant weight to this opinion because it was supported by Plaintiff's ongoing mental health care (including medications and therapy), activities of daily living, and generally normal mental status examination findings. (Tr. 24.) The ALJ also cited Plaintiff's ability to care for two young children, even with reports of panic attacks and self-isolation, as an indication that Plaintiff retains some mental abilities. (*Id.*) The ALJ assigned "partial weight" to state agency psychological consultant Y. Burstein's opinion. (Tr. 25.) Y. Burstein reviewed Plaintiff's file but did not examine Plaintiff directly. (Tr. 25; Stip. 12.)

At step four, the ALJ must determine whether the claimant has the ability to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the ALJ will continue to step five. Here, the ALJ found that Plaintiff was unable to perform any past relevant work as a "child monitor" because of Plaintiff's restriction to "unskilled work." (Tr. 26.)

At step five, the ALJ determines whether the claimant can perform "alternative occupations available in the national economy" considering his or her RFC, age, education, and work experience. *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995); 20 C.F.R. § 404.1560(c)(2). If the claimant has the capacity to perform alternative work, then the claimant is not

disabled.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant does not have the capacity to perform other substantial gainful work, then the ALJ must find that the claimant is disabled.  *Id.*

The ALJ found that considering Plaintiff's age, education work experience, and residual function capacity as well as vocational expert testimony, there were "jobs that exist in significant numbers in the national economy" that Plaintiff could perform.  (*Id.*)  Specifically, relying on the vocational expert testimony, the ALJ found that Plaintiff could perform "light, unskilled occupations" such as a mail clerk, office helper, and garment sorter.  (Tr. 26-27.)  For these reasons, the ALJ determined that Plaintiff was not "disabled" as defined in the Act because she was "capable of making a successful adjustment" to other jobs.  (Tr. 27.)  Therefore, Plaintiff was not entitled to disability benefits.

## LEGAL STANDARDS

### I.    Substantial Evidence Standard of Review

Claimants may bring an action in federal court seeking judicial review of the Commissioner's denial of benefits. C.F.R. §422.210.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *accord* 42 U.S.C. §
405(g).  The Second Circuit has defined substantial evidence as
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  *Halloran v. Barnhart*, 362
F.3d 28, 31 (2d Cir. 2004).  Under this standard of review, the
court "may not substitute its own judgment for that of the
[ALJ], even if it might justifiably have reached a different
result upon a *de novo* review."  *Jones v. Sullivan,* 949 F.2d 57,
59 (2d Cir. 1991).

## II.  Treating Physician Rule

The ALJ must evaluate every medical opinion in the
record "[r]egardless of its source" before finding a claimant to
be disabled or not.  20 C.F.R. § 404.1527(c).  The ALJ will then
decide how much weight to assign each opinion based on the
source's relationship with the claimant, the consistency of the
opinion with the record as a whole, the specialization of the
medical source, and any other relevant factors that tend to
support or contradict the medical opinion.  *Id*.

Under the treating physician rule, a "treating
source's opinion on the issue of the nature and severity of a
[claimant's] impairment(s) will be given 'controlling weight' if
the opinion is 'well-supported by medically acceptable clinical
and laboratory diagnostic techniques and is not inconsistent
with the other substantial evidence in the case record.' " *Greek*

*v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); 20 C.F.R. § 404.1527(c)(2).[1]

The Commissioner's regulations enumerate several factors that may guide an ALJ's determination of what weight to give to a treating source's opinion: (1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ is not required to cite each factor explicitly in his or her decision, but must apply the substance of the regulations. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

When a treating physician's opinion is not given controlling weight, the ALJ must "comprehensively set forth" his or her "reasons for the weight assigned to a treating physician's opinion." *Halloran* 362 F.3d at 33. The regulations also require that the ALJ set forth "good reasons" for not

---

[1] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule. *See id.* § 404.1527(c)(2). Plaintiff filed his claim on January 25, 2016. Accordingly, the court applies the treating physician rule in the instant case. *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

crediting the opinion of the treating provider. *Cervini v. Saul*, 17-cv-2128 (JMA) 2020 WL 2615929 at *5 (E.D.N.Y. May 21, 2020) (citing *Schaal*, 134 F.3d 496, 503 (2d Cir. 1998)); *accord* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion"). Good reasons "reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." *Abate v. Comm'r*, 18-cv-2040 (JS), 2020 WL 2113322, at *4 (E.D.N.Y. May 4, 2020); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). Further, "[t]he failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

## DISCUSSION

On appeal from the Commissioner's final decision, Plaintiff argues that the ALJ's decision was not supported by substantial evidence and that the ALJ improperly weighed the medical opinions. (Pl. Mem. 5, 20.) Specifically, Plaintiff argues that the ALJ erred by violating the treating physician rule when she (i) did not give controlling weight to Dr.

Suryadevera's opinion and (ii) did not provide "good reasons" for assigning only "partial weight" to this opinion. (Pl Mem. 16-17, 19-20.) Consequently, the Plaintiff asks that the ALJ's decision be vacated and the matter remanded for further proceedings. (Pl. Mem. 20.) Defendant argues that the ALJ's decision not to give controlling weight to Plaintiff's treating physician was supported by substantial evidence, and that the ALJ provided good reasons for doing so. (Def. Mem. 4, 9-10.) According to Defendant, the ALJ's decision should be affirmed because the ALJ reasonably concluded that the overall record did not support a finding of disability. (Def. Mem. 4-5.) For the reasons set forth below, the Court concludes that the ALJ violated the treating physician rule and remands the case for further proceedings consistent with this Memorandum and Order.[2]

## I.    The ALJ Violated the Treating Physician Rule

As a threshold matter, as discussed above, Dr. Suryadevara is Plaintiff's treating physician and has been treating Plaintiff weekly since 2014, which the ALJ acknowledged. (Tr. 24.) Dr. Suryadevara provided mental health treatment in the form of monthly medication and weekly therapy sessions. (*Id.*)

---

[2]    Although Plaintiff did not challenge ALJ's step three analysis, the court notes that any change in the weight assigned to the medical opinions may require a reassessment using the "special technique" outlined by the regulations to assess mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a.

The ALJ violated the treating physician rule by assigning only partial weight to Dr. Suryadevara's opinion and significant or partial weight to other physician's and consultant's opinions, without providing "good reasons" for according limited weight to Dr. Suryadevara's opinion regarding plaintiff's alleged disability. *See Selembo v. Comm'r of Soc. Sec.*, No. 19-cv-2902 (KAM), 2021 WL 1428599, at *5 (E.D.N.Y. Apr. 15, 2021). For the reasons set forth below, the court concludes that the ALJ violated the treating physician rule and remands this case for further proceedings.

A. <u>The ALJ Erred by Not Assigning Controlling Weight to Plaintiff's Treating Physician</u>

Although an ALJ is permitted to weigh a medical consultant's findings alongside a treating physician's medical opinion, the ALJ generally "should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013). The general rule of the Second Circuit has been that the opinion of "a non-examining medical expert who has not personally examined a claimant is afforded little weight." *Destina v. Berryhill*, No. 17-cv-02382 (ADS), 2018 WL 4964103, at *7 (E.D.N.Y. Oct. 15, 2018) (citing *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990); *Maldonado v. Comm'r of Soc. Sec.*, No. 12-cv-5297, 2014 WL 537564, at *14 (E.D.N.Y. Feb. 10, 2014) ("Not having examined

[the plaintiff], [a non-examining medical expert's] opinion cannot constitute substantial evidence and normally may not override a treating source's opinion unless it is supported by sufficient medical evidence in the record.").  District courts have remanded cases where the ALJ improperly applied the treating physician rule by discounting the treating physician's opinion without sufficient rationale, and instead crediting the opinion of the consultative examiner.  *See Selembo*, 2021 WL 1428599, at *5 (holding that the ALJ misapplied the treating physician rule by according greater weight to a one-time consultative examiner than the treating physician, without properly explaining the ALJ's reasoning); *Rosato v. Barnhart*, 352 F. Supp. 2d 386, 397 (E.D.N.Y. 2005) (same).

In cases involving mental health treatment, "the treating physician rule takes on added significance" because "the longitudinal relationship between a mental health patient and his [or her] treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination."  *Sierra v. Comm'r of Soc. Sec.*, No. 17-cv-10197, 2018 WL 7681060, at *19 (S.D.N.Y. Dec. 6, 2018); *see also Roman v. Astrue*, No. 10-cv-3085, 2012 WL 4566128, at *18 (E.D.N.Y. Sept. 28, 2012) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating

physician rule is particularly important in the context of mental health." (quoting C*anales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010))). In contrast, "consultative exams are often brief, are generally performed without the benefit or review of [the] claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990).

In weighing Dr. Suryadevara's opinion, the ALJ briefly noted that Dr. Suryadevara treated Plaintiff since 2014 for monthly medication and weekly therapy, but did not substantively consider the length, frequency, nature, and extent of the treating relationship. *See* 20 C.F.R. § 416.927(c) (enumerating several factors that may guide the ALJ's determination of what weight to assign a treating source's opinion). The ALJ also failed to evaluate whether the treating physician's opinion regarding the "nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id*. Accordingly, the court concludes that the ALJ committed legal error by not considering these factors, which further support assigning controlling weight to Dr. Suryadevara's opinion, when determining how much weight to assign to the treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2); *see also Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 507 (S.D.N.Y.

2014) (holding that the ALJ erred by "failing to explicitly consider several required factors, including [the treating source's] specialty, and the frequency, length, nature, and extent of treatment"); *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 267 (E.D.N.Y. 2001) (remanding case for ALJ's failure to apply the treating physician rule because there was "no reference in the ALJ's decision to the various factors that must be considered in deciding what weight to give the opinion of a treating physician").

Similarly, in weighing the consultative examiner Dr. Porcelli's findings, the ALJ failed to conduct a thorough analysis of whether Dr. Porcelli's opinion was consistent with the record *as a whole*. Pursuant to 20 C.F.R. § 404.1527(c), the ALJ must consider the consistency of the opinion with the record as a whole, among other factors, when weighing medical opinions. In affording "significant" weight to Dr. Porcelli's opinion, the ALJ relied on Plaintiff's ongoing mental health care, activities of daily living, and mental status examinations. (Tr. 24.) The ALJ, however, did not address the evidence in the record suggesting that Plaintiff's psychiatric problems significantly interfered with Plaintiff's ability to function on a daily basis. For example, Mr. Eisenhardt asserted that Plaintiff did not take care of anyone else and had a home health aide helping her. (Stip. 2.) Furthermore, Plaintiff testified that her

partner, Mr. Eisenhardt, managed her children's schedules, feedings and appointments, but that she helps get her kids to school. (Stip. 3-4.) The ALJ and Dr. Porcelli appear to have overlooked Dr. Suryadevara's finding that Plaintiff had minimal capacity to adapt to changes in her environment. (Stip. 2, 4, 14.)

Furthermore, the ALJ also assigned "significant" weight to the state agency psychological consultant Y. Burstein's opinion that Plaintiff could "adapt to changes and relate adequately to others," despite the fact that Burstein's opinion was in conflict with the findings of Plaintiff's long-term treating physician. (Tr. 25.) In doing so, the ALJ did not discuss the limited nature of Plaintiff's relationship with Burstein when assigning significant weight to the state agency consultant's opinion. Although "the ultimate issue of disability is reserved to the Commissioner, the regulations make clear that opinions from one-time examining sources that conflict with treating source opinions are generally given less weight." *Lausell v. Comm'r of Soc. Sec.*, No. 19-cv-2016 (SLC), 2021 WL 797074, at *15 (S.D.N.Y. Mar. 1, 2021) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).

Moreover, the ALJ's assessment of Plaintiff's adaptation impairment is also inconsistent with the record. The ALJ failed to explain the bases for assigning "little weight" to

Dr. Suryadevara's opinion regarding Plaintiff's ability to adapt to work settings, but "significant weight" to Y. Burstein's opinion with respect to Plaintiff's impairment in adaptation. Here, the ALJ assigned "little weight" to the treating physician's opinion that Plaintiff has a mild impairment in adaptation because evidence in the record suggests *greater* functional limitations, such as Plaintiff's "reports of panic attacks and self-isolation." (*Id.*) Nonetheless, the ALJ assigned "significant weight" to Y. Burstein's opinion that Plaintiff can adapt to changes well because of her "euthymic affect, good eye contact and cooperative attitude during many mental health visits, and adequate social skills demonstrated" during Plaintiff's single examination by Dr. Porcelli. (*Id.*) In support of Y. Burstein's opinion, the ALJ reported that mental status examinations "regularly" found intact insight and judgment, despite Plaintiff's "reports of hallucinations and panic attacks." (*Id.*) Thus, as explained above, the ALJ selectively used Plaintiff's reports of panic attacks and further limitations to discount the weight assigned to the treating physician's opinion, but did not use the same limitations regarding panic attacks in according "significant" weight Y. Burstein's opinion. *See Wright v. Comm'r of Soc. Sec.*, No. 18-cv-05971 (FB), 2020 WL 1323013, at *3 (E.D.N.Y. Mar. 20, 2020) ("An ALJ may not simply pick and choose . . .

only such evidence that supports [his or her] determination, without affording consideration to evidence supporting the plaintiff's claims.").

Although it is "up to the agency, and not [the] court to weigh the conflicting evidence in the record," the ALJ should have addressed and explained the conflicting evidence described above when assigning significant weight to medical opinions, regardless of how she resolved the conflict. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Accordingly, the court finds that the ALJ violated the treating physician rule by failing to properly explain the rationale for assigning Dr. Suryadevara's opinion less than controlling weight.

On remand, the ALJ is directed to comprehensively weigh the regulatory factors and consider the record evidence in its entirety to determine the weight of Dr. Suryadevara's opinion. If the ALJ determines that Dr. Suryadevara's opinion is not entitled to controlling weight, the ALJ "must nonetheless articulate a basis for the alternative weight assigned." *Knight v. Comm'r*, 18-cv-2474 (KAM), 2020 WL 3085778 at *7 (E.D.N.Y. Jun. 10, 2020).

B. The ALJ Provided Insufficient Reasons for Discounting the Treating Physician's Opinion

The ALJ is required to comprehensively set forth reasons for the weight assigned to a treating physician's

opinion.  *See Snell*, 177 F.3d at 133; 20 C.F.R. § 416.927(c)(2)

(requiring SSA to "always give 'good reasons' in [its] notice of

determination or decision for the weight [given to a] treating

source's medical opinion.").  The ALJ *can* give the treating

physician's opinion less weight if the opinion inconsistent with

other substantial evidence in the record, but an ALJ's failure

to "comprehensively" provide reasons for discounting a treating

physician's opinion requires remand.  *See, e.g., Halloran*, 362

F.3d at 33 (explaining that the court will remand when it

encounters opinions from ALJs that do not comprehensively set

forth reasons for the weight assigned to a treating physician's

opinion).

        In assigning "partial" weight to Dr. Suryadevara's

opinion, the ALJ reasoned that restrictions allowing Plaintiff

to be off-task and to miss several days of work per month are

"inconsistent with evidence" in the record such as the

Plaintiff's good response to medication, caring for two small

children, and reports of improved mood and mood stability.  (Tr.

25.)  The ALJ did not provide explanation on how evidence

showing improvements in Plaintiff's mood is inconsistent with

restrictions on Plaintiff's difficulties at work.

        Thus, the ALJ did not give "good reasons" for

assigning more weight to an opinion based on a one-time

examination compared to the treating physician's opinion based

on a long-established doctor and patient relationship. *See*
*Balodis*, 704 F. Supp. 2d at 267 (remanding case for ALJ's
failure to apply treating physician rule because, *inter alia*,
there was "no reference in the ALJ's decision to the various
factors that must be considered in deciding what weight to give
the opinion of a treating physician"); *Rahman v. Astrue*, No. 09-
cv-82 (RJD), 2009 WL 3614605, at *9 (E.D.N.Y. Nov. 2, 2009)
(remanding case because the "ALJ's minimal explanation for
disregarding [the treating physician's] medical opinion does not
adequately examine relevant factors typically considered in
applying the treating physician rule").

On remand, if the ALJ affords less weight to Dr.
Suryadevara's opinion, the ALJ must give good reasons for doing
so and consider factors such as "(1) the frequen[cy], length,
nature, and extent of treatment; (2) the amount of medical
evidence supporting the opinion; (3) the consistency of the
opinion with the remaining medical evidence, and (4) whether the
physician is a specialist" pursuant to the Commissioner's
regulations. *Burgess,* 537 F.3d at 117, 129; *see also* 20 C.F.R.
§§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

## CONCLUSION

For the reasons set forth above, the Plaintiff's
motion for judgment on the pleadings is GRANTED and the
Commissioner's cross-motion for judgment on the pleadings is

DENIED.  The case is REMANDED for further proceedings consistent
with this Memorandum and Order.  The Clerk of Court is
respectfully directed to enter judgment in favor of Plaintiff
and close the case.

SO ORDERED.


_____/s/_____
HON. KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York


DATED:    July 2, 2021
          Brooklyn, New York